UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XIAOYAN JIANG, A208-804-372,<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, et al.,<br>Respondents. | No. 1:26-cv-06969 DAD AC<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner, an immigration detainee represented by counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging her detention by the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"). ECF No. 2. This matter was referred to the undersigned pursuant to Local Rule 302 and 28 U.S.C. § 636(b)(1)(B). The petition asserts violations of petitioner's due process rights based on the revocation of her release without pre-deprivation notice or hearing, as well as a warrantless arrest in violation of 8 U.S.C. § 1357(a)(2). ECF No. 2 at 13-19. Petitioner asserts her post-deprivation bond hearing was insufficient to cure the pre-deprivation violation, and therefore her continued and prolonged detention violates procedural due process independent of the circumstances of her arrest. Id. at 19-23. Finally, petitioner argues that her detention violates the Immigration and Nationality Act ("INA"), as well as the Suspension Clause. Id. at 23-24. Petitioner seeks

immediate release or a bond hearing at which respondents must demonstrate by clear and convincing evidence that no conditions can reasonably assure petitioner's appearance and safety of the community, as well as declaratory relief. Id. at 24. As discussed below, the court recommends that petitioner's request for habeas relief be granted, and that petitioner be immediately released with the same conditions to which she was subject immediately prior to her detention.

I. Factual Background

Petitioner is a native and citizen of the Peoples Republic of China who entered the United States at Newark, New Jersey, on a non-immigrant B2 visa (temporary visitor for pleasure) on May 11, 2015, with authorization to remain in the country until November 10, 2021. ECF No. 6 at 9 (Petitioner's I-213). Although her B2 visa expired, petitioner remained in the United States. On February 25, 2016, petitioner filed an application for asylum and withholding of removal (Form I-589), which remains pending. Id. It is undisputed that she has no criminal history. ECF No. 6 at 9.

On July 12, 2026, the Pacific Enforcement Response Center "notified ERO Los Angeles of an enforcement lead" and prepared a targeted enforcement operation to arrest petitioner before her upcoming scheduled Southwest Airlines Flight in the early morning hours of July 14, 2026. ECF No. 6 at 8-9. Specifically, the Form I-831 provides that ICE prepared its various record checks prior to the enforcement operation, and then conducted a Terry stop[1] to confirm petitioner's identity after she was observed approaching the check-in counter at 4:45am in Ontario, California, and "subsequently, ICE officers took JIANG into ICE custody without incident." Id. at 8. ICE departed the airport by 5:20am and transported petitioner to the San Bernadine Sub Office "for case processing." Id. After petitioner's arrest, "[i]t was determined that JIANG was amenable to removal and was taken into ERO Los Angeles custody. JIANG will be processed as a Notice to Appear and will remain in ICE custody pending removal proceedings." Id. at 10. The warrant reflects that it was served on petitioner by a deportation

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

officer, in the presence of a Mandarin interpreter, in the city of "San Bernadino, CA" on July 14, 2026—not by arresting officers at the airport in Ontario, California. ECF No. 6 at 17 (I-200 Warrant). Similarly, petitioner's Notice of Custody Determination reflects that it was executed by the same deportation officer (in the presence of the same interpreter) at 10:25am on July 14, 2026, in the U.S. Immigration & Customs Enforcement, DRO-San Bernadino, CA Sub Office located at 655 West Rialto Avenue. Id. at 19 (Form I-286). In short, none of the documentation provided by respondents reflect that petitioner was served with a warrant and/or Notice to Appear —or any immigration-related documents for that matter—prior to or at the time of her arrest by ICE. ECF No. 6 at 7-9, 12-19. Rather, ICE's records reflect that petitioner did not receive any notice of the basis for her arrest until hours later at ICE's San Bernadino Sub Office.

Petitioner was placed into removal proceedings and charged as a removable alien who remained in the United States for a period longer than permitted, in violation of sections 237(a)(1)(B) of the INA. ECF No. 6 at 12 (July 14, 2026 Form I-862 Notice to Appear). Petitioner initially declined to sign the Form I-862 or Notice of Custody Determination, but subsequently filed a motion seeking a custody redetermination hearing just two days later, on July 16, 2026. Id. at 14, 19, 21-23. Twelve days later, on July 28, 2026, an immigration judge ("IJ") denied petitioner's request for a change in custody status because the IJ found petitioner presented a "flight risk which no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding." Id. at 25 (IJ Order). Although petitioner reserved the right to appeal the IJ's decision, to date, petitioner has not appealed the outcome of that bond hearing to the Board of Immigration Appeals ("BIA").

The record before the court reflects that petitioner has remained in immigration detention since her arrest on July 14, 2026. She is presently detained at the California City Immigration Processing Center in California City, California. ECF No. 2.

## II. Procedural History

On August 31, 2026, the court received the petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging petitioner's detention. ECF No. 2. As noted above, the petition asserts violations of petitioner's federal due process rights based on the revocation of her release

without pre-deprivation notice or hearing, as well as a warrantless arrest in violation of 8 U.S.C. § 1357(a)(2). ECF No. 2 at 13-19. Petitioner asserts her post-deprivation bond hearing in July 2026 was insufficient to cure the pre-deprivation violation, and therefore her continued detention violates procedural due process independently of the due process violations inherent in the circumstances of her arrest. Id. at 19-23. Finally, petitioner argues that her continued detention violates the INA as well as the Suspension Clause. Id. at 23-24. Petitioner seeks immediate release from confinement or a bond hearing at which respondents must demonstrate by clear and convincing evidence that no conditions of release can reasonably assure her appearance and the safety of the community, as well as declaratory relief. Id. at 24.

By Order dated September 2, 2026, the undersigned directed respondents to respond to the petition and substantively address whether there are any factual or legal issues that materially distinguish this case from the court's prior orders in Andrades Gonzalez v. Chestnut, No. 1:26-cv-1198 DAD CKD, 2026 WL 473059 (E.D. Cal. Feb. 19, 2026), Lopez-Morales v. Warden, No. 1:26-CV-02416 DAD SCR, 2026 WL 2018611 (E.D. Cal. July 13, 2026), and other similar cases previously decided by this court. ECF No. 5. The court advised respondents that "[t]he court will construe failure to distinguish the above cited cases as a concession that the cases are not substantively distinguishable." Id. Petitioner's reply, if any, was due within seven days of being served with respondents' response. Id. Respondents were further directed not to transfer petitioner outside of this judicial district. Id.

Respondents "do not dispute that Petitioner is entitled to receive a custody re-determination hearing under section 1226(a) and it is implementing regulations." ECF No. 6 at 3. However, because petitioner received an unfavorable custody determination hearing on July 28, 2026, twelve days after she requested one on July 16, 2026, respondents argue that petitioner received all the due process afforded her by Congress. Id. at 2. "Under section 1226(a), it is the detainee who must request the bond hearing," and petitioner initially declined to sign the Notice to Appear (including the Request for Prompt Hearing) on July 14, 2026, the day of her arrest by ICE. ECF No. 6 at 14. After petitioner did receive a custody redetermination hearing, she failed to appeal the unfavorable ruling to the BIA. Respondents argue that petitioner should be required

to exhaust her administrative remedies before filing a federal habeas petition, and respondents assert "[t]he Court should dismiss this petition or, alternatively, stay these proceedings" in order to "allow the agency to address the detention issue in the first instance[.]" Id. at 4.

Finally, respondents assert that this case is substantively distinguishable from the cases cited in the court's Minute Order because DHS lawfully detained petitioner pursuant to "an administrative warrant . . . served on Petitioner at the time of her detention, and by virtue of the Notice to Appear, she was given notice of the reason for detention." Id. at 4. Further, "she was provided the opportunity to have her custody status reviewed by an [IJ], which she initially refused but ultimately had an opportunity to be heard at her requested bond hearing, where she was represented by counsel." Id. Respondents assert that "[t]he cases cited by the Court indicate that those petitioners were not afforded the notice and opportunity to be heard," whereas in this case, "there is no evidence of a due process violation of any kind, and Respondent should not be faulted for Petitioner's failure to exercise her right to appeal the decision." Id. at 5.

In her traverse, petitioner points out that while respondents articulated arguments in response to count three of her habeas petition, they did not fully respond to petitioner's allegations regarding the circumstances of her arrest under 8 U.S.C. § 1357(a)(2) (count two), the absence of any process prior to the seizure (count one), the absence of an individualized basis for detention (count four), or petitioner's claim that her detention violates the Suspension Clause (count five). ECF No. 7 at 2-4. In addition, petitioner contends that respondents' assertion the warrant was "served on Petitioner at the time of her detention" is belied by the record before the court. Id. Petitioner asserts the records establish that ICE received the enforcement lead two days before petitioner's arrest, completed its records check and probable cause determination and stopped petitioner as she walked toward an airline check-out counter, but nevertheless did not serve the warrant on petitioner until several hours later at ICE's San Bernadino Sub-Office. Id. at 8-9, 17. Petitioner contends that the record establishes respondents had every opportunity to afford petitioner advanced notice and process *before* the seizure but declined to do so. Id. at 4-6. Moreover, respondents did not dispute that petitioner has a protected liberty interest in her freedom from confinement she has enjoyed for over ten years but did not engage in any analysis

under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), relying instead on an unsupported assertion that petitioner received notice through the warrant and Notice to Appear (served on petitioner *after* the seizure). Id. at 6. Finally, petitioner argues that respondents' remaining arguments about mootness, exhaustion and sufficiency of the bond hearing are based upon the false premise that process afforded petitioner after the unlawful seizure excuse the lack of process due before it, which the court should reject. Id. at 2. Respondent requests release from confinement upon the conditions to which she was subject prior to her July 14, 2026 arrest. Id. at 10.

III. Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)). In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

IV. Discussion

A. Exhaustion of Administrative Remedies

As a threshold matter, the court will address respondents' argument that the court should not reach the merits of this petition because petitioner failed to appeal the denial of bond by the IJ to the Board of Immigration Appeals. ECF No. 6 at 4. Habeas petitioners seeking relief under 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies. See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). Because this requirement is "prudential" and not a "jurisdictional prerequisite," however, it is subject to waiver. Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional.").

Generally, prudential exhaustion may be required where the following factors are met: "(1) agency expertise makes consideration necessary to generate a proper record and reach a

proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted). Even if the Puga factors weigh in favor of prudential exhaustion, courts may waive the prudential exhaustion requirement if the petitioner demonstrates one of the following factors applies: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury would result," or (4) "the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citations omitted).

Here, even if the Court assumes that the Puga factors apply, petitioner's pursuit of administrative remedies would be inadequate and futile. The administrative remedy respondents suggest—appealing the IJ's unfavorable July 28, 2026 decision (ECF No. 6 at 25-26) to the BIA—would be incapable of addressing the injury alleged. Petitioner claims that the original constitutional transgression occurred when ICE detained her without notice or a pre-deprivation hearing. Even if the BIA granted petitioner's relief by reversing the IJ's unfavorable decision and granted petitioner a new custody redetermination hearing, it would not address the propriety of petitioner's claim that she was not afforded constitutionally adequate procedural safeguards *prior* to the deprivation of her liberty interest. As this court has previously explained, respondents' exhaustion argument "essentially puts the cart before the horse" because "[[h]ere, the due process deprivation given respondents' admission that petitioner is being detained pursuant to § 1226(a) occurred when respondents did not conduct a *pre*-deprivation hearing before an immigration judge. Having requiring petitioner now, *post-hoc*, jump through the hoop [of exhaustion] . . . would not adequately address the deprivation of due process [she] has already suffered." Carrasquel v. Warden, No. 1:26-cv-06867 DAD JDP, 2026 WL 2621102, at *1 (E.D. Cal. Sept. 4, 2026) (citing R.N.G. v. Semaia, Case No. 5:26-cv-02839-DSR, 2026 WL 2089544, at *3 (C.D. Cal., July 14, 2026) (explaining that the pursuit of administrative remedies would be inadequate and futile because a post-deprivation bond hearing before an immigration judge is incapable of addressing the injury suffered as a result of the lack of notice or a pre-deprivation hearing)). See

also Padilla v. Mullin, No. 3:25-cv-270-ART-CSD, 2026 WL 1245462, at *3 (D. Nev. May 6, 2026) ("[Petitioner's] challenge falls squarely into the futility exception to prudential exhaustion . . . [Petitioner's] claim is that he was entitled to process *before* DHS could detain him, and that the Government's failure to provide him with pre-deprivation process makes his detention unconstitutional . . . No post-detention custodial hearing could fully address [Petitioner's] complaint or award him sufficient relief.").

The undersigned finds that petitioner's claim falls squarely into the futility exception to prudential exhaustion. Accordingly, waiver of the prudential exhaustion requirement is appropriate, and the undersigned will proceed to consider the merits of petitioner's procedural due process claim.

B. Petitioner's Detention without Pre-Deprivation Notice or a Hearing Violates Procedural Due Process

As discussed above, petitioner's primary allegation in her habeas petition is that respondents violated her federal due process rights by revoking her release without pre-deprivation notice or a hearing. ECF No. 2 at 13-19. Petitioner further asserts her post-deprivation bond hearing held nearly two weeks after her unlawful arrest was insufficient to cure the pre-deprivation violations. Id. at 19-23.[2] The court agrees.

Here, respondents concede that petitioner is currently detained pursuant to 8 U.S.C. § 1226(a) but maintain that "[t]his case is substantively distinguishable from the cases cited by the Court in that DHS lawfully detained Petitioner by an administrative warrant, that warrant was served on Petitioner at the time of her detention, and by virtue of the Notice to Appear, she was given notice of the reason for detention." ECF No. 6 at 4. Furthermore, "at her requested bond hearing, she was represented by counsel and was given the opportunity to be heard." Id. In contrast to this case, respondents assert that "the cases cited by the Court indicate that those

---

[2] As noted above, petitioner further argues that her detention violates the INA and the Suspension Clause, and constituted a warrantless arrest in violation of 8 U.S.C. § 1357(a)(2). Id. at 23-24. Because the court finds petitioner is entitled to habeas relief on her procedural due process claim, it is unnecessary to address her alternative arguments seeking the same or similar relief (i.e., release) in detail here.

petitioners were not afforded the notice and opportunity to be heard[.]" Id. at 5. Respondents allege, "the implementing regulations of section 1226(a) requires no more than that." Id. at 4-5.

The court finds respondents' attempt to distinguish this court's prior cases, which held that the government's belated post-deprivation compliance with statutory requirements cannot cure violations of 1226(a) when a petitioner is initially detained, to be unpersuasive. Although respondents allege in a conclusory fashion that "DHS lawfully detained Petitioner by an administrative warrant, that warrant was served on Petitioner at the time of her detention, and by virtue of the Notice to Appear, she was given notice of the reason for detention," these representations are directly contradicted by the records respondents have filed with the court. ECF No. 6 at 4. As noted above, although ICE apparently began planning and preparing to arrest petitioner up to two days in advance of her early morning flight, there is no evidence that petitioner weas afforded pre-deprivation notice or a hearing. On the contrary, the documents suggest that she was not served with a copy of the warrant or Notice to Appear until many hours following her arrest, during her case processing at ICE's San Bernadino Sub Office. ECF No. 6 at 7-19. Furthermore, when she requested a custody redetermination hearing, she did not receive one for nearly two weeks. On this record, respondents have not demonstrated compliance with section 1226(a).

As this court has previously recognized, § 1226(a) provides "extensive procedural protections" including several layers of review of the initial custody determination, and the requirement that a noncitizen cannot be arrested without an administrative warrant or detained without notice of the basis for their detention through a notice to appear, both of which must be signed and served by designated immigration officers. D.Y. v. Warden of the Golden State Annex, No. 1:26-CV-06235-TLN-CSK, 2026 WL 2391205, at *2 (E.D. Cal. Aug. 17, 2026) (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1202 (9th Cir. 2022)). In addition,

> courts have found each of the following violations of the requirements of 8 U.S.C. § 1226(a) to provide a sufficient basis mandating a petitioner's release: (1) failure to arrest following or contemporaneously with the issuance of a warrant pursuant to § 1226(a); (2) failure to issue a Notice to Appear charging the petitioner as inadmissible prior to, or contemporaneously with, the detention of the petitioner; (3) failure to provide the petitioner with

> an initial custody determination either prior to or contemporaneously with detention; (4) failure to provide the petitioner an opportunity to demonstrate to the immigration officer that release would not pose a danger to property or persons and that the petitioner is likely to appear for future proceedings; and (5) failure to provide the petitioner with the basis for the petitioner's continued detention.

Id. (quoting Zurita Navarro v. Warden Ctrl. Valley Annex Det. Facility, No. 1:26-CV-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026) (citations omitted) (collecting cases). Here, respondents have not demonstrated that they have complied with the procedural protections of § 1226(a) by issuing a warrant and/or Notice to Appear charging the petitioner as inadmissible prior to, or contemporaneously with, petitioner's detention.

Considering the facts of this case, the undersigned therefore adopts and incorporates by reference the reasoning in Gonzalez v. Chestnut, No. 1:26-cv-1198 DAD CKD, 2026 WL 473059 (E.D. Cal. Feb. 19, 2026), Lopez-Morales v. Warden, No. 1:26-CV-02416 DAD SCR, 2026 WL 2018611 (E.D. Cal. July 13, 2026), as well as similar cases including Zurita Navarro v. Warden, No. 1:26-cv-05661 DAD SCR, 2026 WL 2294963 (E.D. Cal. Aug. 9, 2026) and Carrasquel, 2026 WL 2621102. As this court found in each of these prior cases, petitioner's re-detention without *pre-deprivation* notice and a hearing before a neutral adjudicator where the government would be required to justify her re-detention by clear and convincing evidence violates due process, regardless of what process was afforded to petitioner in the weeks following her arrest. Based on the reasoning set forth in each of these cases, the undersigned finds that petitioner's immediate release is the appropriate remedy for the violation of her due process rights.

Finally, the court agrees with petitioner that respondents wholly failed to respond to the remaining claims set forth in her habeas petition. ECF No. 6. While it is unnecessary for the court to discuss petitioner's additional claims seeking the same or similar relief (i.e., release from custody) in detail, the undersigned nevertheless construes respondents' failure to address these arguments as a concession that these arguments have merit. See Siang v. Chiang, 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) ("The court construes the government's failure to address this argument as a concession to petitioner's argument.").

////

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 2) be GRANTED, as follows:

   a. Respondents shall IMMEDIATELY RELEASE petitioner XIAOYAN JIANG, A208-804-372, from custody, with the same conditions she was subject to immediately prior to her detention on July 14, 2026. At the time of release, respondents must return all of petitioner's documents and possessions.

   b. Respondents shall not impose any additional restriction on petitioner unless it is determined to be necessary at a future pre-deprivation/custody hearing.

   c. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they provide at least 7 days' written notice to petitioner and hold a pre-deprivation bond hearing before a neutral decision maker, at which hearing respondents will bear the burden of demonstrating that petitioner is a flight risk or danger to the community and petitioner's eligibility for bond must be considered.

   d. The order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal and petitioner receives notice of that final order of removal.

2. Within three days of an order adopting these findings and recommendations, respondents be required to file a notice of compliance confirming petitioner's release and that the conditions of her supervision are the same as those to which she was subject prior to her July 14, 2026 detention.

3. The Clerk of the Court is directed to enter judgment for petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local

Rule 304(b). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 6, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE